ORIGINAL

BY FAX

Roy A. Katriel (265463)
**THE KATRIEL LAW FIRM**
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Tel: (858) 350-4342
Fax: (858) 430-3719
e-mail: rak@katriellaw.com

*Counsel for Plaintiff Debra Hilton*

FILED
2013 MAY 10 P 3:11
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**




| | |
|---|---|
| **DEBRA HILTON On Behalf Of Herself And All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**APPLE INC.**<br><br>**Defendant.** | **CASE NO.:** CV 13 2167<br><br>**COMPLAINT**<br><br>**Class Action**<br><br>**DEMAND FOR JURY TRIAL** |

**NATURE OF THE ACTION**

1. Plaintiff Debra Hilton ("Plaintiff" or "Hilton"), by and though her undersigned counsel, brings this class action against Apple Inc. (formerly known as Apple Computer, Inc. and hereinafter "Apple"), on behalf of herself and all other similarly situated owners of the Apple iPhone 4 mobile telephone. The Apple iPhone 4 is plagued by a latent defect that causes its Power Button to fail, usually shortly after the 1 year warranty covering the device has expired, thereby rendering the phone unusable. Apple knew when it manufactured, marketed, and sold the device that this defect existed, but failed to disclose it, instead touting the purported superior attributes of the telephone in Apple's various advertisements and marketing campaigns. Not only did consumers, like Plaintiff and members of the putative class, rely on this material omission, but so did wireless telephone carriers like AT&T from whom Plaintiff purchased her phone and with whom Apple associated in an enterprise to jointly market and sell the phone. Because Apple's marketing and sale of the defective iPhone 4 was carried through a series of acts of mail and wire fraud that were perpetrated during Apple's association-in-fact with its wireless carrier distributors like AT&T, Apple's conduct is actionable as a pattern of racketeering activity under, *inter alia*, 18 U.S.C. §1962. Moreover, Apple's unlawful and fraudulent conduct is also actionable under California's Unfair Competition Law ("UCL"), Section 17200 et. seq. of the California Business and Professions Code. Plaintiff who, like other members of the putative class, suffered injury to her business and property directly as a result of Apple's conduct, now brings this class action to seek monetary and equitable relief, as well as attorneys' fees and costs of suit.

2. Plaintiff Debra Hilton ("Plaintiff") brings this this action on behalf of herself and a class of similarly situated Apple iPhone 4 purchasers who purchased their telephones either from Apple or AT&T in the United States.

3. Plaintiff is the owner of an iPhone 4. Due to an undisclosed latent defect, the power button that is used to turn on and off her iPhone 4 failed, thereby preventing Ms. Hilton from being able to restart her phone or toggle it on and off, which essentially rendered it useless.

4. Thousands of iPhone 4 users have suffered a similar fate. Customers, like Ms. Hilton, whose phones fail outside Apple's one year limited warranty period are forced to scuttle their phones or pay Apple $149.99 plus shipping for a replacement.

**PARTIES**

5. Plaintiff Debra Hilton is currently a resident of St. Augustine, Florida, and was a resident of Neptune Beach, Florida when she purchased her iPhone 4 online on October 17, 2011 from AT&T, a wireless telephone carrier that had contracted with Apple and was licensed by Apple to sell the iPhone 4 to customers within the United States pursuant to terms agreed to by the association-in-fact between Apple and AT&T. As of October 2012, though Ms. Hilton still owns her defective iPhone 4, she is no longer a subscriber of AT&T, but instead is a subscriber of Straight Talk. Because AT&T was unable to provide adequate wireless coverage at Ms. Hilton's new address at St. Augustine Beach, Florida, it released her from her contract with AT&T, and Ms. Hilton contracted with Straight Talk for wireless service.

6. Defendant Apple Computer, Inc. ("Apple" or "Defendant") is a corporation organized under the laws of the State of California with its principal place of business at 1 Infinite Loop in Cupertino, California 95014. Apple designs, manufactures, and sells computers, phones, mp3 players, and an assortment of other personal technology products and related software, services, and peripherals. Of particular significance to this complaint, Apple designs, develops, and markets a line of smartphone cellular telephones called iPhones. Since their inception in 2007, Apple has released six models of iPhones. In addition to the original, the models consist of the 3, 3GS, 4, 4S and 5. The iPhone 4 was released in the summer of 2010. At that time, and until January 2011, AT&T was the only wireless carrier authorized by Apple to sell the iPhone.

**JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction over Count I of this Class Action Complaint, pursuant to 28 U.S.C. § 1331 because this count arises under a federal statute; namely 18 U.S.C. § 1961 et. seq. Subject-matter jurisdiction over all counts of this Class Action Complaint

also is independently proper under the Class Action Fairness Act, 28 U.S.C. §1332(d). Representative Plaintiff Debra Hilton is presently, and was at the time she purchased her iPhone 4, a Florida resident who intends to remain there, thereby making her a citizen of Florida. Defendant is a California corporation with its principle place of business in California, and is therefore a citizen of California. The amount in controversy exceeds $5,000,000 for the named Plaintiff and Class members collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and the Class and the profit reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein.

8. This Court also has supplemental subject-matter jurisdiction over Count III of this Complaint pursuant to 28 U.S.C. § 1367 because this claim is so related to the claims asserted in Counts I and II of the Complaint and over which this Court has original subject-matter jurisdiction, that it forms part of the same case or controversy as the claims asserted in those counts.

9. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). Defendant is headquartered within this judicial district, and orchestrated the marketing and distribution of the iPhone 4 from within this judicial district, has agents, transacts business, and is found within this judicial district.

## INTRADISTRICT ASSIGNMENT

10. Pursuant to Civil Local Rule 3-5(b), Plaintiff alleges that intradistrict assignment to the San Jose Division of this Court is proper because the acts complained of took place, originated, and have a material connection to Apple's corporate headquarters located in the county of Santa Clara, which is served by the Court's San Jose Division.

## THE WIDESPREAD COMPLAINTS ABOUT THE DEFECTIVE iPHONE 4

11. Apple is a multi-billion dollar publically traded company that, among other things, designs, develops, markets and sells a line of smartphones called the iPhone.

12. Since its inception in 2007, Apple has sold hundreds of millions of iPhone units at prices that generally range from $199.00 to $650.00. Indeed, the iPhone is one of the most popular

smartphones in the world and has made Apple billions of dollars in sales revenue. In the fourth quarter of 2012 alone, Apple sold nearly 50 million iPhone units.

13. Despite touting the iPhone as an innovative technological marvel, the iPhone 4 suffers, and since its manufacture has suffered, from a latent defect in a relatively simple component part. Upon information and belief, each iPhone 4 contains a flex cable that connects the power button to the phone. Premature deterioration of the flex cable causes the power button to become harder and harder to depress until eventually it becomes entirely unresponsive requiring costly repair.

14. The failure of the power button that has plagued the iPhone 4 is more than an inconvenience. As the method by which the phone is toggled on and off, the failure of the button precludes general use of the phone and thereby effectively prevents iPhone 4 owners from being able to use the phone for the purpose for which it was intended.

15. Despite knowing that this defect existed as of the time of the phone's manufacture, and that it would be substantially certain to exhibit itself within approximately 18 months' of the phone's first use, Apple only warrants the iPhone against defects in materials and workmanship for a period of one year.

> Apple Inc. ("Apple") warrants this Apple-branded hardware product against defects in materials and workmanship under normal use for a period of ONE (1) YEAR from the date of retail purchase by the original end-user purchaser ("Warranty Period"). If a hardware defect arises and a valid claim is received within the Warranty Period, at its option and to the extent permitted by law, Apple will either (1) repair the hardware defect at no charge, using new or refurbished replacement parts, (2) exchange the product with a product that is new or which has been manufactured from new or serviceable used parts and is at least functionally equivalent to the original product, or (3) refund the purchase price of the product.

16. Apple routinely denies that any defect with the power button, flex cable, or any of its associated component parts exists and has therefore refused to repair Plaintiff's and Class members' iPhones that are older than 12 months.

17. Thousands of consumers have been affected by this defect. Many have called Apple and/or gone directly to Apple retail stores. So frustrated are Apple iPhone consumers that many have taken to posting their complaints on-line. While there are numerous websites that are host to

these complaints, perhaps none is more compelling than the forum sponsored by Apple itself, https://discussions.apple.com/thread/2713539?start=315&tstart=0.

18. Below, are direct quotes from postings made by iPhone users on Apple's own sponsored web forum. On January 8, 2011, user CwissyBwear posted the following:

> Out of the blue today the power/lock button on my iPhone 4 became completely unresponsive. It doesn't seem to be jammed and it actually seems to be loose and a bit wiggly. Now I can't restart my phone and I can't lock it. I was wondering if this was a common problem with other iPhone 4 units and what would be the best way to go about getting it fixed. I got this phone from a friend about a month ago who had only used it for about two months before switching to a different phone. Prior to receiving this phone I had been using an iPhone 3G for two years with no problems whatsoever. This iPhone 4 has not been dropped or exposed to water or humidity of any kind. Thanks in advance!

19. Over the next two years, this post received hundreds of similar responses and complaints with more being added every day. Indeed, as of March 26, 2013, these posts have been viewed over 720,525 times. The thread tells the whole story.

20. CwissyBwear's initial response received overwhelming support and demonstrated that the problem was widespread and spreading faster as the iPhone 4 matured in the market place. For example.

> Elo820 on Jan 10, 2011 stated: Wow! Same here. I was going on vacation and just normally using my iPhone, then I tried pressing my sleep button and it's wiggly. It's really hard to make it go sleep now. I never dropped my phone either. It's weird to know that someone else has the same problem. What do I do?

21. Those with the same problem, but who were out of warranty (a common circumstance reflected in the postings), were left without recourse:

> bobs7349, Aug 14, 2011 stated: My iphone 4 is out of warranty since a couple of months. The power button is stuck and not functional at all anymore. It happened out of the blue. I checked with AT&T and in the Apple store. AT&T sends you straight to Apple. The only option I got from a genius was to do a "repair exchange" to a new iphone for $199. Pretty steep price for a button. And I don't understand why a simple button only lasts 14 months. Aren't they famous for their quality? I'm very disappointed.

> w5cdt, Dec 11, 2011 stated: This is a DEFECT. Users should NOT be paying $149 to rectify a manufacturing defect. Mine only lasted 15 months, otterboxed, and handled carefully. APPPLE SHOULD HANDLE THIS FOR ALL USERS...including out of warranty. Many users have had this problem. It's a joke and Apple should make good on it. Not amused. What a ripoff. :-(

w5cdt, Jan 9, 2012 stated: If you are "in warranty" they will fix it. If you are 1 nanosecond out of warranty it will cost you $150. Lame.

Mike, Apr 12, 2012 stated: I think it's appalling that Apple refuses to fix the defective sleep-wake button on my iPhone 4 unless I pay $150. Unbelievable. It had a shelf life of 14 months? And even though Apple routinely replaces iPhones 4's with this defect when they're still within warranty (see above), those of us who are just outside the warranty period, we're supposed to accept that the phone functioned properly for barely a year? When will Apple take responsibility for what -- it seems pretty clear -- is an apparent manufacturing defect? And why isn't Apple concerned that telling longtime loyal customers to take a hike in this kind of situation will eventually turn the customers away and put a dent in the company's profits?

22. Even clearer from the posts, the power button seemed to routinely fail just as the one year limited warranty period expired.

> LoveToCookSF, Aug 20, 2012 stated: EVERYONE: The fact that the power button on all of our phones keeps breaking is NOT a coincidence. It's called PLANNED OBSOLESCENCE. They're SUPPOSED to break so that we have to buy replacements. Apple, Inc. realizes hundreds of millions of dollars in additional revenue each year because of this. For example, do you REALLY think that a company as innovative and powerful as Apple doesn't have the resources to manufacture an iPhone screen that doesn't crack so easily? If Apple made a phone that didn't break, we'd never have to replace it and buy a new one, and that would make Apple investors very upset.

> AdamyKlein, Dec 28, 2011 asks My iphone 4 is a couple weeks past its 1 year warranty and it seems fishy that all of these issues seem to be happening just after the 1 year mark. Is apple designing their products to only have a certain life expectancy...

23. The failure of the power button was, upon information and belief, due to a defective flex cable that prematurely wears and does not work for the reasonably expected lifespan of the product. As noted by a more technically savvy user:

> Elirose, Feb 22, 2012: In the business of repairing iPhones and the iPhone 4 has by far the worst power button and home button. The power button does exactly what others are complaining about - it becomes difficult to press or totally unresponsive. The home button also becomes "iffy" and will often take more than one push to work. I have many customers who have complained about this and it is not the part itself that breaks (for the power button) it is a shifting of the flex cable that causes a lack of contact when the button is pressed. I have had success on multiple occassions just taking the power button out, adding a small round piece of plastic to the button itself to bridge the gap. The home button, however, does seem to totally break down. When this one goes out, I have to replace the home button flex cable. It's only a $5 part but a $45 repair due to the fact that it requires a complete tear down. I've seen 3G

> and 3GS iphones develop problems with the home and power buttons but not near as quickly and not near as many. It really does seem like an intentional breakdown.

24. Pleas to Apple by consumers routinely went unanswered, as Apple has refused to remedy or correct this defect.

25. Apple has been aware of the power button defect yet refused, and continues to refuse, to do anything about it.

> JosephCooper7 , Mar 8, 2013 stated: I just got off the phone with Apple Care and had a nice little chat with a manager called AL (Case number: #421500023). Apparently, this is a known issue but their engineering department has not deemed this an issue to be a known manufacturing issue. Therefore the only support that apple care can offer is a $199.99 replacement I-phone 4S. While the phone is currently out of contract, I feel that apple would have higher standards for their products and it really bothers me that the "engineering department" won't issue a fix for such a simple part failure!

26. Frustrated users searched for more affordable solutions to save their phones. For example, several users posted you tube videos with possible solutions. See e.g. http://www.youtube.com/watch?v=DRt4Zjbx6n4. Collectively, these videos have been viewed over a million times. These so-called "solutions," however, are mere temporary stop-gap measures by which one may be able to bypass the Power Button, but this still does not correct the underlying defect and does not allow use of the phone in the manner intended. Indeed, while Plaintiff attempted such a possible solution to her defective iPhone 4, this stop-gap measure only worked temporarily before this measure failed.

27. The problem has become so pervasive that private companies seeking to sell tools and repair services to frustrated iPhone users posted a step by step guide and how to replace flex cable and power buttons. http://www.ifixit.com/Guide/Installing-iPhone-4-Power-Lock-Button/4332/1. Unfortunately, the 29 step process is rated "difficult" and not only requires technical skills but also an assortment of specialized tools, neither of which the average user would possess.

28. Ultimately, user sentiment was most concisely summarized by 2TheMax on April 4, 2012:

> Apple, though I love your products I will not pay for poor quality products! No matter how innovative or revolutionary they are, your devices are worthless if they are made poorly and break in a short period of time. From all the replies it's evident that a new iPhone with proper care should not have this issue in such a short time. Address this issue Apple or lose one customer.

**PLAINTIFF'S OWN EXPERIENCE WITH THE DEFECTIVE iPHONE 4**

29. Plaintiff Hilton's experience was no different than other iPhone owners.

30. Ms. Hilton purchased her iPhone 4 via ATT's website on October 17, 2011. The phone suffered a terminal power button failure on January 15, 2013, fifteen months after the phone had been purchased, and less than three months after Apple's limited product warranty had expired.

31. On January 17, 2013, Ms. Hilton called Apple customer service to address the issues with the power button on her phone. She initially spoke with a representative named Jodi, explained her issue and was transferred to Technical Support, who informed her that her phone was out of warranty and that her only option was to purchase a new phone.

32. Dissatisfied with Apple's response, on February 13, 2013, Ms. Hilton once again called Apple Technical Support (ticket# 412626964) to report the power button failure and discuss her options with respect to repair or replacement of the phone. She spoke with a representative named Anthony who presented the following options: (a) take the phone to an AT&T retail store from where it can be sent to Apple for repair or replacement at a cost of $149.99 plus $6.95 in shipping and handling; (b) request a shipping box from Apple in which the product could be returned for repair or replacement at a cost of $149.99 plus $6.95 in shipping and handling; (c) take the phone to the Genius Bar at an Apple retail store where the product could be returned for repair or replacement at a cost of $149.99 plus $6.95 in shipping and handling; (d) call Apple and ask them to send a replacement phone at a cost of $29.00 for overnight delivery fees plus a $500.00 hold on her credit card in addition to the repair or replacement cost of $149.99 plus $6.95 in shipping and handling.

**THE RICO ENTERPRISE FORMED BY THE ASSOCIATION-IN-FACT BETWEEN APPLE AND AT&T**

33. Although Apple designed and manufactured the iPhone 4, it does not provide wireless telephone service and, without such service, the iPhone is unable to work for its intended use as a mobile telephone. As early as 2005, approximately a year and a half before Apple first launched the first version of its iPhone (then the iPhone 3) in the United States, Apple began negotiating with

mobile telephone carriers in the United States with the aim of arriving at a venture pursuant to which Apple would provide the iPhone device and the mobile carrier would provide the wireless telephone and data service for it.

34. Apple's negotiations culminated with the creation of an association-in-fact between Apple and AT&T, one of the largest wireless carriers in the world. Pursuant to this association-in-fact, Apple and AT&T agreed to jointly market and sell the iPhone, and Apple and AT&T agreed that AT&T would, for a period of 5 years, be the exclusive wireless carrier in the United States that was authorized to provide wireless telephone and data service for the iPhone.

35. The association-in-fact between Apple and AT&T had, and continues to have, a common purpose; namely, to sell as many Apple iPhone devices serviced by AT&T as possible.

36. The common purpose of this association-in-fact was evidenced by the revenue sharing agreement that formed part of the enterprise's formation. For example, upon information and belief, as part of the terms of the enterprise as it was initially formed between Apple and AT&T, Apple was to receive 10 percent of all iPhone sales made in AT&T stores in the United States, as well as approximately $10 from every AT&T iPhone customer's monthly service bill and, AT&T, in turn, was to receive a 5-year exclusive right to be the sole provider of mobile service for the iPhone in the United States, as well as receiving a portion of iTunes sales made by Apple.

37. The association-in-fact between Apple and AT&T also has a definite structure, as it represents a formal business venture between two large corporate players, Apple and AT&T, that is memorialized in written agreements. Further, within this enterprise venture, Apple and AT&T allocated to each other specific functions and responsibilities. Apple, for example, was to have exclusive responsibility for design and manufacturing of the iPhone, including any firmware of software upgrades that were to be provided for the device, while AT&T was to be responsible for provisioning wireless voice and data services for the device. Apple was designated to be in charge of pricing for the device, regardless of whether it was sold at an Apple or AT&T store or online portal. Likewise, Apple was to be in charge of administering and handling all warranty claims for the device.

38. The specific terms of the contractual relationship between Apple and AT&T, as it

pertains to the iPhone, have been amended through the years, such that conditions like exclusivity or the extent of revenue share between the two have evolved over time. The Apple-AT&T association's core purpose and function, however, has remained unchanged, continues to this day, and still involves the sale of as many iPhone devices as possible, with Apple being responsible for the design, manufacture, and warrantying of the device itself, while AT&T remains responsible for the wireless voice and data service needed to use the device.

39. The association-in-fact between Apple and AT&T forms the requisite RICO enterprise for purposes of Count I of this Class Action Complaint.

## APPLE'S ACTS OF MAIL AND WIRE FRAUD FORMING THE PREDICATE ACTS OF A PATTERN OF RACKETEERING ACTIVITY

40. It was Apple's goal to sell as many iPhones as possible. In furtherance of that goal, it was incumbent upon Apple to convince consumers and wireless carriers in the United States that its iPhones, including its iPhone 4, were devices of superior quality and reliability that were to be valued by consumers who were solicited to sign on to wireless service contracts of 2 years' duration for their iPhone.

41. Certainly, it was in Apple's interest to keep hidden from both consumers and carriers like AT&T that a flaw or defect existed in the iPhone 4 that was substantially certain to render its Power Button unusable within less than two years.

42. No reasonable consumer, and certainly not Plaintiff, would have purchased an iPhone 4 and agreed to a 2-year contract at the pricing and terms that they did if they had been made aware that the phone contained a latent defect that was substantially certain to render the phone unusable prior to the expiration of its useful life.

43. Towards that end, in its communications with AT&T during which Apple negotiated the terms of its association with Apple to jointly market and sell the iPhone 4, Apple sent, received, and exchanged, through the use of interstate wires, numerous emails with personnel at AT&T during which Apple touted the superior attributes of the iPhone 4, but craftily and fraudulently omitted mentioning any disclosure of the material defect plaguing the phone's Power Button. Apple did the

same in mailed communications with personnel at AT&T that were sent via the United States mail. AT&T relied on these representations by Apple as to the superior attributes of the iPhone 4 as a basis to its decision to continue its association with Apple to jointly market and sell the iPhone 4 devices. Had AT&T been made aware by Apple of the true nature of the defect plaguing the iPhone 4, as opposed to being fraudulently deceived by Apple's emails and mailed correspondence, AT&T would not have agreed to enter or continue its association-in-fact with Apple with respect to the joint marketing and sale of the iPhone 4 in the manner in which AT&T did.

44. Similarly, during the time that Apple was jointly marketing and selling the iPhone 4, including the time that Plaintiff purchased her phone, Apple disseminated through interstate wires various advertisements online on its website and other media that touted the attributes of the iPhone 4. Notably, none of these advertisements contained any disclosure by Apple that the iPhone 4 was plagued by a latent defect that was substantially certain to cause its Power Button to fail prematurely and before the reasonably expected useful lifetime of the phone.

45. Plaintiff relied on this material omission. Had Plaintiff been informed by Apple, prior to purchasing her iPhone 4, that the device contained a latent defect to its Power Button that was substantially certain to render the phone unusable before the device's reasonably expected useful life (and in Plaintiff's case, before even the expiration of the 2-year contract she was offered and signed for service for the device), she would not have purchased the phone.

**PROXIM ATE CAUSATION AND DAMAGES AND/OR INJURY SUSTAINED**

46. The direct target and purpose of Apple's fraudulent omissions about the existence of a latent defect plaguing the iPhone 4 were consumers like Plaintiff and the class members who Apple was intent on having believe that the iPhone 4 was a superior product that they should desire to purchase at the prices set by Apple. Thus, it was reasonably foreseeable that, as a direct and proximate result of Apple's fraudulent omissions, consumers like Plaintiff who would not have purchased the iPhone 4 had they been aware of the truth as to the existence of the latent defect plaguing the Power Button, did purchase the phone and expended significant money for doing so to obtain a phone that, unbeknownst to Plaintiff and the class members at the time of their respective purchases, was defective.

47. Thus, as a direct, proximate, and foreseeable result of Apple's fraudulent omissions and pattern of racketeering activity, Plaintiff and the class members have been injured in their business and/or property by expending money in the form of the purchase price for the iPhone 4 they purchased from Apple or AT&T and obtaining in return, a materially defective mobile phone that was substantially certain to fail before its reasonably expected useful life. Moreover, with Apple requiring consumers to either purchase a new iPhone or pay $149 to possibly repair the defect once it manifests itself, those class members who actually experienced the iPhone 4 Power Button failure and either made a replacement iPhone purchase or paid to have the defective phone repaired, also were injured by expending money for this new purchase or repair.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action on behalf of herself and on behalf of all other members of the Class ("Class"), defined as all consumers who purchased an iPhone 4 for their own use (as opposed to resale) from either Apple or AT&T in the United States. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and 23(b)(2). Plaintiff reserves the right to modify this definition of the Class as may be appropriate during the course of the litigation.

49. Excluded from the Class are: Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns, judges to whom this action is assigned and any members of their immediate families and staff, as well as any federal, state, or local government officials.

50. Given the volume of iPhone 4 sales made in the United States by Apple and AT&T, there are at least thousands of Class members throughout the United States, thereby making their joinder impracticable.

51. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual class members. These common legal or factual questions include:

a. Whether Apple failed to disclose the true quality and defective nature of the iPhone 4;

b. Whether Apple engaged in a RICO enterprise through its association-in-fact with AT&T;

c. Whether Apple's alleged acts of wire and/or mail fraud constitute a patter of racketeering activity;

d. Whether Apple's conduct was unlawful under California's Unfair Competition Law §17200, et seq.,

e. Whether the members of the Class have sustained damages and/or are entitled to restitution as a result of Apple's wrongdoing;

f. What is the appropriate measure of restitution;

g. Whether the members of the Class are entitled to injunctive and/or declaratory relief.

52. Plaintiff's claims are typical of those of the Class, in that Plaintiff was a consumer who purchased an Apple iPhone 4 directly from either Apple or AT&T. Plaintiff, therefore, is no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

53. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent. Because Plaintiff's iPhone 4 has actually failed as a result of the allegedly defective Power Button, she has every interest and incentive to see to it that this litigation offers redress for that alleged defect. Plaintiff has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

54. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member likely will be relatively small, especially given the expense and burden of individual prosecution of the complex litigation against a large multinational corporate entity like Apple. Thus, it would be virtually impossible for the Class members individually to effectively redress the wrongs done to them. Moreover, even if the Class members could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory

judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

55. In the alternative, the Class may be certified because Apple acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to the Class.

**COUNT I**

**(RACKETEER INFLUENCED AND CORRUPT ORGANZATIONS ACT, VIOLATION OF 18 USC § 1962(c))**

56. Plaintiff hereby incorporates by reference allegations of paragraphs 1-55 of this Complaint with the same force and effect as if these allegations had been repleaded here.

57. Defendant Apple's association-in-fact with AT&T to jointly market and sell the iPhone 4 amounts to an "enterprise" within the meaning of 18 U.S.C. § 1962(c), and as that term is defined in 18 U.S.C. § 1961(4).

58. The activities of the enterprise encompassing the association-in-fact of Apple and AT&T formed part of and/or affected interstate commerce because the iPhone 4 devices were marketed, sold, distributed, activated, and used across state lines.

59. Through the acts alleged herein, including at paragraphs 40-45 *supra*, Defendant Apple conducted or participated in, as well as directed and managed, the affairs of the enterprise identified in paragraphs 33-39 and 57 *supra* through a pattern of racketeering activity, thereby violating 18 U.S.C. § 1962(c).

60. Apple's pattern of racketeering activity consisted of related and continuous acts of wire and/or mail fraud, as detailed herein, including at paragraphs 40-45 *supra*.

61. By reason of, and as a direct, foreseeable, and proximate result of Apple's violation of 18 U.S.C. § 1962(c), Plaintiff and the members of the Class she seeks to represent were injured in their business and/or property by, *inter alia*, being fraudulently sold a defective iPhone 4 device for which they paid money.

62. Apple's misconduct, as alleged herein, is ongoing in that Apple continues to fail to

disclose the defect at issue, continues to deny warranty coverage for the same and to demand payment from consumers whose iPhone 4 exhibits the defect, and if left unrestrained, Apple's misconduct is likely to continue and to harm Plaintiff and the members of the putative Class.

63. Plaintiff and the class members are entitled to and hereby pray for monetary, statutory (including, but not limited to, treble damages and attorneys' fees and costs of suit), injunctive, declaratory, and equitable relief as redress for Apple's violation of 18 U.S.C. § 1962(c).

**COUNT II**
**(RACKETEER INFLUENCED AND CORRUPT ORGANZATIONS ACT, VIOLATION OF 18 USC § 1962(b))**

64. Plaintiff hereby incorporates by reference allegations of paragraphs 1-55 of this Complaint with the same force and effect as if these allegations had been repleaded here.

65. Defendant Apple's association-in-fact with AT&T to jointly market and sell the iPhone 4 amounts to an "enterprise" within the meaning of 18 U.S.C. § 1962(c), and as that term is defined in 18 U.S.C. § 1961(4).

66. The activities of the enterprise encompassing the association-in-fact of Apple and AT&T formed part of and/or affected interstate commerce because the iPhone devices were marketed, sold, distributed, activated, and used across state lines.

67. As part of the enterprise comprising the association-in-fact between Apple and AT&T in connection with the joint marketing and sales of the iPhone 4, Apple acquired and/or maintained control over key functions of the enterprise, including the pricing, terms of sale, design and updates to the iPhone 4, and the warranty coverage offered on the enterprise's sales of the iPhone 4. Apple also acquired and/or maintained an interest in that enterprise amounting to, *inter alia*, the revenues that Apple would be due from the enterprise's sales of iPhone 4 devices.

68. Apple's acquisition and/or maintenance of control and/or an interest in the enterprise was achieved through a pattern of racketeering activity including, *inter alia*, the activities of mail and wire fraud detailed in paragraphs 40-45 *supra*, and thus was in violation of 18 U.S.C. § 1962(b). By fraudulently concealing from AT&T in communications that Apple sent AT&T through the wires and United States mail, the latent defect that plagued the Apple iPhone 4's Power Button, Apple was

able to and did induce AT&T to enter and/or continue its association of the enterprise with Apple and to grant or continue to allow Apple to have control of, and/or an interest in, the enterprise as alleged in paragraph 67.

69. By reason of, and as a direct, foreseeable, and proximate result of Apple's violation of 18 U.S.C. § 1962(b), Plaintiff and the members of the Class she seeks to represent were injured in their business and/or property by, *inter alia*, being fraudulently sold a defective iPhone 4 device for which they paid money.

70. Apple's misconduct, as alleged herein, is ongoing in that Apple continues to fail to disclose the defect at issue, continues to deny warranty coverage for the same and to demand payment from consumers whose iPhone 4 exhibits the defect, and if left unrestrained, Apple's misconduct is likely to continue and to harm Plaintiff and the members of the putative Class.

71. Plaintiff and the class members are entitled to and hereby pray for monetary, statutory (including, but not limited to, treble damages and attorneys' fees and costs of suit), injunctive, declaratory, and equitable relief as redress for Apple's violation of 18 U.S.C. § 1962(b).

**COUNT III**
**(CALIFORNIA'S UNFAIR COMPETITION LAW, VIOLATION OF Cal. Bus. And Prof. Code, § 17200 et. seq.)**

72. Plaintiff hereby incorporates by reference all other paragraphs of this Complaint with the same force and effect as if these allegations had been fully repleaded here.

73. California's Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. Cal. Bus. & Prof. Code §17200.

74. A business act or practice is "unlawful" if it violates any established state or federal law. As alleged herein, Apple's conduct in connection with the marketing and selling of defective iPhone 4 telephones to the Plaintiff and members of the putative Class is an "unlawful business practice" within the meaning of the UCL because, *inter alia*, it violates the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et. seq*. as set forth in Counts I and II of this Complaint.

75. Apple's conduct in marketing and selling iPhone 4 telephones without disclosing the existence of the latent defect to the phone's Power Button that was substantially certain to render the phone unusable before the expiration of its reasonably expected useful lifetime also independently amounts to a "fraudulent" act or practice within the meaning of the UCL.

76. The iPhones purchased by Plaintiff and the putative class members contain a defect that results in the failure of the power button which renders the phone unfit for its intended use.

77. As a direct, proximate, and foreseeable result of Apple's unfair and/or deceptive trade practice, Plaintiff and the putative class members have sustained an ascertainable loss and actual damages, in that their phones are inoperable and/or unusable for the purpose for which they were intended/ otherwise unusable for the purpose.

78. By committing the acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful and fraudulent business practices within the meaning of California Business and Professions Code §§ 17200, et seq.

79. Through its unlawful acts and practices, Apple has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Apple to restore this money to Plaintiff and all Class members, to disgorge the profits Apple made on these transactions, and to enjoin Apple from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class, request award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel.

B. That damages be awarded to Plaintiff and the Class according to proof, including compensatory and statutory damages (including treble damages), as well as a attorneys' fees and cost of suit.

C. That Apple be ordered to put in place a common fund from which eligible claims of members of the Class may be compensated.

D. Restitution in such amount that Plaintiff and all Class members paid to purchase iPhone 4 and 4s products, or the profits Apple obtained from those transactions.

E. A declaration and order enjoining Apple from selling its products with a defective power button.

F. An order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post-judgment interest.

G. An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Apple as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

H. Such other and further relief as may be deemed necessary or appropriate.

Dated: May 10, 2013

Respectfully submitted,

Roy A. Katriel (SBN 265463)
THE KATRIEL LAW FIRM
12707 High Bluff Drive, Suite 200
San Diego, California 92130
Telephone: (858) 350-4342
Facsimile: (858) 430-3719
e-mail: rak@katriellaw.com

*Counsel for Plaintiff Debra Hilton*