1  RICHARD B. GOETZ (S.B. #115666)
   rgoetz@omm.com
2  KELSEY M. LARSON (S.B. #267982)
   klarson@omm.com
3  O'MELVENY & MYERS LLP
   400 S. Hope Street
4  Los Angeles, CA 90071-2899
   Telephone:    (213) 430-6000
5  Facsimile:    (213) 430-6407

6  MATTHEW D. POWERS (S.B. #212682)
   mpowers@omm.com
7  VICTORIA L. WEATHERFORD (S.B. #267499)
   vweatherford@omm.com
8  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
9  San Francisco, CA 94111-3823
   Telephone:  (415) 984-8700
10 Facsimile:   (415) 984-8701

11 Attorneys for Defendant
   Apple Inc.
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                SAN FRANCISCO DIVISION

16

17 DEBRA HILTON, on Behalf of Herself        Case No. 3:13-CV-2167-EMC
   And All Others Similarly Situated,
18                                           DEFENDANT APPLE INC.'S NOTICE OF
                          Plaintiffs,        MOTION AND MOTION TO DISMISS
19                                           AND/OR TO STRIKE COMPLAINT;
            v.                               MEMORANDUM OF POINTS AND
20                                           AUTHORITIES IN SUPPORT THEREOF
   APPLE INC.,
21                                           Hearing Date:   September 19, 2013
                          Defendant.         Time:           1:30 p.m.
22                                           Judge:          Hon. Edward M. Chen
                                             Courtroom:      5
23
                                             Complaint Filed: May 10, 2013
24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS AND/OR TO STRIKE**

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 19, 2013, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, 17th Floor, Courtroom 5, before the Honorable Edward M. Chen, Defendant Apple Inc. ("Apple") will, and hereby does, move the Court for an order dismissing Plaintiff's Complaint ("Compl.") pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and/or 12(f) of the Federal Rules of Civil Procedure.

Specifically, Apple seeks an order: (1) dismissing Plaintiff's entire complaint because Apple has no duty to disclose an alleged latent defect that may manifest after the expiration of the warranty period; (2) dismissing Plaintiff's causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for failure to state a claim and/or failure to plead with specificity under Rule 9(b); (3) dismissing Plaintiff's California's Unfair Competition Law ("UCL") cause of action for failure to state a claim; and (4) dismissing and/or striking Plaintiff's prayer for injunctive relief for lack of standing.

This Motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any other related documents filed in connection with this motion, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

Dated:  July 8, 2013　　　　　　　　　　RICHARD B. GOETZ
　　　　　　　　　　　　　　　　　　　　MATTHEW D. POWERS
　　　　　　　　　　　　　　　　　　　　KELSEY M. LARSON
　　　　　　　　　　　　　　　　　　　　VICTORIA L. WEATHERFORD
　　　　　　　　　　　　　　　　　　　　O'MELVENY & MYERS LLP

　　　　　　　　　　　　　　　　　　　　By: _/s/ Matthew D. Powers_____
　　　　　　　　　　　　　　　　　　　　　　　　Matthew D. Powers
　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　Apple Inc.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND FACTS .............................................................................................. 4

III.    LEGAL STANDARD ................................................................................................... 5

IV.     MANUFACTURERS HAVE NO DUTY TO DISCLOSE LATENT DEFECTS ............ 6

V.      PLAINTIFF CANNOT STATE A CLAIM UNDER THE RACKETEER
        INFLUENCED AND CORRUPT ORGANIZATIONS ACT ........................................... 8

        A.      Apple Never Engaged in Any "Predicate Acts." ..................................... 9

        B.      Plaintiff's RICO Allegations Are Content-Free, Conclusory Boilerplate ........... 11

                1.      Plaintiff Has Not Adequately Pled that Apple Has Committed Mail
                        and Wire Fraud........................................................................................ 12

                2.      Plaintiff Cannot Allege Causation for Any RICO Violation ................... 13

VI.     PLAINTIFF HAS FAILED TO PLEAD A CLAIM UNDER THE UCL ....................... 14

VII.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF .......................... 15

VIII.   CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alan Neuman Prods., Inc. v. Albright*,
862 F.2d 1388 (9th Cir. 1988)............................................................................. 12

*Allen v. New World Coffee, Inc.*,
2001 WL 293683 (S.D.N.Y. 2001) ........................................................................ 3

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................. 6, 11

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988).................................................................................. 5

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ............................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............................... 5, 11, 13

*Berenblat v. Apple Inc.*,
2009 WL 2591366 (N.D.Cal. Aug. 21, 2009) ........................................................ 7

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ............................................................................. 14

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987)........................................................................... 2, 10

*Campion v. Old Republic Home Prot. Co.*,
861 F. Supp. 2d 1139 (S.D. Cal. 2012) ................................................................ 15

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002)................................................................................ 9

*Daugherty v. American Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006) ....................................................................... passim

*Deitz v. Comcast Corp.*,
2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ...................................................... 16

*Dhaliwal v. Singh*,
2013 WL 2664336 (E.D. Cal. June 12, 2013).......................................................... 3

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) .................................................................... 7

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)........ 6

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Farmers Ins. Exch. v. Superior Court*,
   2 Cal. 4th 377 (1992) ............................................................... 15

4

*Figueroa Ruiz v. Alegria*,
   896 F.2d 645 (1st Cir. 1990) ....................................................... 3

5

6

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006).................................................. 3, 15

7

*Hicks v. Kaufman and Broad Home Corp.*,
   89 Cal. App. 4th 908 (2001) ........................................................ 7

8

9

*Hoey v. Sony Elec., Inc.*,
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ................................ 1, 7, 15

10

*In re Actimmune Mktg. Litig.*,
   614 F. Supp. 2d 1037 (N.D. Cal. 2009) ...................................... 13

11

12

*In re All Terrain Vehicle Litig.*,
   771 F. Supp. 1057 (C.D. Cal. 1991), *aff'd* 978 F.2d 1265 (9th Cir. 1992) ........................ 10

13

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV
Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ......................................... 7

14

15

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ........................................ 10

16

17

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices
and Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..................................... 7, 9

18

19

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ................................................... 15

20

*Jackson v. Roe*,
   273 F.3d 1192 (9th Cir. 2001)..................................................... 14

21

22

*Lancaster Comty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991)................................................. 11, 12

23

*Long v.Hewlett-Packard Co.*,
   2007 WL 2994812 (N.D. Cal. July 27, 2007)................................ 7

24

25

*Martinelli v. Petland, Inc.*,
   2009 WL 2424655 (D. Ariz. Aug. 7, 2009)................................. 11

26

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988)........................................................ 5

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Missaghi v. Apple Inc.*,
No. 13-CV-2003-GAF (C.D. Cal. May 31, 2013) ................................................................. 16

*Morgan v. Harmonix Music Systems, Inc*.,
2009 WL 2031765 (N.D. Cal. July 7, 2009)....................................................................... 7

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)........................................................................................... 6

*Nichols v. Mahoney*,
608 F. Supp. 2d 526 (S.D.N.Y. 2009) .............................................................................. 11

*O. Thronas, Inc. v. Blake*,
2010 WL 1371390 (D. Haw. Apr. 7, 2010) ...................................................................... 11

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x. 489 (9th Cir. 2009) .............. 6, 8

*Poulos v. Caesar's World, Inc.*,
379 F.3d 637 (9th Cir. 2004)........................................................................................... 13

*Quach v. Cross*,
2004 WL 2860346 (C.D. Cal. June 10, 2004),
*aff'd*, 252 F. App'x 775 (9th Cir. 2007)............................................................................ 3

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010)........................................................................................... 10

*Schmidt v. Fleet Bank*,
16 F. Supp. 2d 340 (S.D.N.Y. 1998).................................................................................. 3

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986).......................................................................................... 12

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)..................................................................................................... 2, 10

*Seely v. White Motor Co.*,
63 Cal. 2d 9 (1965) ......................................................................................................... 7

*Shaw v. Hahn*,
56 F.3d 1128 (9th Cir. 1995)............................................................................................ 6

*Sigmond v. Brown*,
645 F. Supp. 243 (C.D. Cal. 1986).................................................................................... 9

*Stephenson v. Neutrogena Corp.*,
2012 U.S. Dist. LEXIS 105099 (N.D. Cal. July 27, 2012).................................................. 15

*Targan v. Nissan Motor Company Ltd.*,
2013 U.S. Dist. LEXIS 87148 (N.D. Cal. June 20, 2013) .................................................. 14

APPLE INC.'S  MOTION TO DISMISS
COMPL. & MEM. OF P. & A. IN SUPPORT
CASE NO. 3:13-CV-2167-EMC

# TABLE OF AUTHORITIES
(continued)

Page

*Tietsworth v. Sears, Roebuck & Co.*,
   2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ........................................................................ 14

*United States v. Brooklier*,
   685 F.2d 1208 (9th Cir. 1982) ................................................................................................ 9

*United States v. Dowling*,
   739 F.2d 1445, 1449 (9th Cir. 1984),
   *rev'd on other grounds*, 473 U.S. 207 (1985) ...................................................................... 10

*Vitt v. Apple Inc.*,
   469 Fed. App'x. 605 (9th Cir. 2012) .................................................................................. 1, 6

*Walsh v. Ford Motor Co.*,
   588 F. Supp. 1513 (D.D.C. 1984) .......................................................................................... 8

*Walsh v. Nevada Dep't of Human Res.*,
   471 F.3d 1033 (9th Cir. 2006) .............................................................................................. 15

*Wang v. OCZ Tech. Group, Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) ......................................................................................... 16

*Wilson v. Hewlett Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ................................................................................................ 6

## STATUTES

18 U.S.C. § 1341 ....................................................................................................................... 10

18 U.S.C. § 1343 ....................................................................................................................... 10

18 U.S.C. § 1961(1) .............................................................................................................. 2, 10

18 U.S.C. § 1962(b) .................................................................................................................... 5

18 U.S.C. § 1962(c) .................................................................................................................... 5

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 5, 15

## RULES

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 5

Fed. R. Civ. P. 12(f) .................................................................................................................... 6

Fed. R. Civ. P. 9(b) ...................................................................................................... 3, 9, 11, 12

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3        In this putative class action, plaintiff Debra Hilton ("Plaintiff") claims that defendant

4   Apple Inc. ("Apple") "failed to disclose" that the power button on the iPhone 4 could eventually

5   "fail" and "prevent" the consumer "from being able to restart [the] phone or toggle it on and off."

6   (Complaint ("Compl.") ¶¶ 1, 3.)  According to Plaintiff, failing to tell consumers that their iPhone

7   4's power button could break after their warranty expired was a ***federal crime***, and Plaintiff

8   claims that Apple's sales of the popular iPhone 4 were all part of a "racketeering" enterprise that

9   was supposedly formed between Apple and AT&T.  Plaintiff's claims fail as a matter of law and

10  the Complaint should be dismissed with prejudice.

11        As Plaintiff admits, Apple provides its customers with a one-year express warranty, and

12  will repair or replace devices that malfunction within a year of purchase.  (*Id.* ¶ 15.)  Tellingly,

13  Plaintiff does *not* allege that Apple refused to repair or replace Plaintiff's iPhone 4 (or the

14  iPhones of putative class members) within that one-year warranty—indeed, she admits that her

15  own iPhone 4's power button failed three months ***after her warranty expired***, *i.e.*, fifteen months

16  after she purchased the device.  (*Id.* ¶ 30.)  California law is clear that except for serious safety

17  risks—and there are none at issue here—there is simply ***no duty*** to disclose that a product could

18  malfunction after the warranty expires.  *See Daugherty v. American Honda Motor Co., Inc.*, 144

19  Cal. App. 4th 824, 830 (2006) (rejecting claims for post-warranty product failures); *Vitt v. Apple*

20  *Inc.*, 469 F. App'x. 605, 608 (9th Cir. 2012) ("*Daugherty* … hold[s] that there is no duty to

21  disclose that a product may fail beyond its warranty period absent an affirmative

22  misrepresentation or a safety risk"); *Hoey v. Sony Elec., Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D.

23  Cal. 2007) ("[t]here is no authority that provides that the mere sale of a consumer electronics

24  product in California can create a duty to disclose any defect that may occur during the useful life

25  of the product.").  Apple (like every other manufacturer) has no duty to disclose that a product

26  might eventually break—particularly where, as here, the "malfunction" allegedly occurs long

27  after the warranty has expired.

28

1         Although Apple had no duty to disclose this alleged defect, Plaintiff attempts to use

2  Apple's "failure" to do so to as the basis for claims under the federal Racketeering Influenced and

3  Corrupt Organizations Act ("RICO").  Specifically, Plaintiff argues that Apple and wireless

4  carrier AT&T entered into an "association-in-fact" whereby they "agreed to jointly market and

5  sell the iPhone" with AT&T being "the exclusive wireless carrier" for the iPhone in the United

6  States.  (Compl. ¶¶ 34-35.)  As part of that "association-in-fact," Plaintiff contends, consumers

7  "were solicited to sign on to wireless service contracts of 2 years' duration" even though the

8  device allegedly had a latent "defect" that was likely "to render its Power Button unusuable

9  within less than two years."  (*Id.* ¶¶ 40-41.)  As part of this association, Plaintiff claims that Apple

10  engaged in "racketeering activity"—predicate acts of mail fraud and wire fraud—by not

11  informing AT&T and consumers that the iPhone 4's power button could break "within less than

12  two years."  (*See id.* ¶¶ 40-45.)

13         Plaintiff's attempt to transform an ordinary false advertising case into a RICO conspiracy

14  is meritless.  To establish the "racketeering activity" element of Plaintiff's RICO claims, she must

15  plead facts that, if proven, would show that Apple committed a predicate criminal act.  *See* 18

16  U.S.C. § 1961(1); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493 (1985).  But the only

17  predicate act Plaintiff identifies is Apple's "failure" to disclose that the iPhone 4's power button

18  might break after the warranty expires—nowhere in her complaint does Plaintiff identify a single

19  false statement by Apple (or anyone else).  (*See id.* ¶¶ 40-45.)  Allegations of non-disclosure can

20  ***only*** support a claim of mail or wire fraud ***if*** the plaintiff proves the defendant breached an

21  "independent duty" to disclose the information at issue.  *California Architectural Bldg. Prods.,*

22  *Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) (alleged omissions cannot

23  serve as the basis for a federal claim of mail or wire fraud "[a]bsent an independent duty, such as

24  a fiduciary duty or an explicit statutory duty").  Apple has no duty to affirmatively disclose that

25  the iPhone 4's power button could break "within less than two years," and Plaintiff does not (and

26  cannot) allege facts to suggest that Apple engaged in anything even remotely approaching mail

27  fraud, wire fraud, or any other criminal act.

28

Plaintiff's failure to allege any viable predicate acts, by itself, requires dismissal of her claims.  But that is not the only flaw in Plaintiff's complaint.  Even assuming that failing to disclose this alleged "defect" in advertisements or in communications with AT&T could qualify as mail or wire fraud—it cannot—Plaintiff has failed to allege ***any facts*** about those supposed instances of fraud, much less the specific details required by Rule 9(b).  Nor has Plaintiff alleged any facts that could support the required causal link between her injury and Apple's supposed "racketeering activity."  And Plaintiff's claim for injunctive relief is also defective—and should be stricken or dismissed—because she lacks standing to pursue injunctive relief, *i.e.*, that she is "realistically threatened by a repetition of the violation" that she seeks to enjoin.  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006).

"[C]ourts must always be on the lookout for the putative RICO case that is really 'nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Allen v. New World Coffee, Inc.*, 2001 WL 293683, at *3 (S.D.N.Y. 2001) (quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)).  Indeed, "[t]he mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants.  In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Dhaliwal v. Singh*, 2013 WL 2664336, at *19 (E.D. Cal. June 12, 2013) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)); *Quach v. Cross*, 2004 WL 2860346, at *5 (C.D. Cal. June 10, 2004), *aff'd*, 252 F. App'x 775 (9th Cir. 2007).  Here, Plaintiff's claims all rely on a fundamentally flawed premise—that Apple was under an affirmative duty to tell consumers that the power button on iPhone 4 devices could break after Apple's one-year warranty had expired.  (Compl. ¶¶ 40-41.)  Since no such duty exists, Plaintiff's entire Complaint should be dismissed with prejudice.[1]

---

[1] Concurrently with this motion, Apple is filing a motion to dismiss or, in the alternative, stay proceedings on first-to-file grounds.  Apple believes the instant case should be stayed or dismissed pending resolution of the first-filed action pending in the United States District Court for the Central District of California.  However, in light of Apple's deadline to respond to the Complaint, Apple has simultaneously moved to dismiss this action on the merits.  In addition, in light of Plaintiff's allegations regarding AT&T, Apple intends to also move to compel arbitration.

1    **II.    BACKGROUND FACTS**

2         According to the Complaint, Plaintiff bought an iPhone 4 from AT&T's website on

3    October 17, 2011.  (*Id.* ¶ 5.)  Plaintiff alleges that her iPhone 4 is "plagued by a latent defect"

4    because the "power button" on the phone eventually became "unresponsive."  (*Id.* ¶¶ 1, 14.)

5    Plaintiff does not (and, of course, cannot) claim that the power buttons on the iPhone 4 do not

6    work when customers first purchase the device.  Instead, she claims that the power buttons are

7    "substantially certain"² to fail "within approximately 18 months' of the phone's first use."  (*Id.* ¶¶

8    15, 41, 42, 45.)

9         Plaintiff does not allege that either Apple or AT&T made any false statements in

10   connection with the advertising or sale of the iPhone 4.  Instead, she claims that Apple "failed to

11   disclose" the existence of a "latent defect," and had she known of the defect, she would not have

12   purchased the device.  (*Id.* ¶¶ 1, 3, 45.)  Plaintiff admits that Apple's iPhone 4 comes with a one-

13   year limited warranty, and that the first time she experienced any "power button" issues was

14   January 15, 2013—approximately three months after the warranty ended.  (*Id.* ¶¶ 13, 15.)  By that

15   time, Plaintiff had also been "released" from her contract with AT&T, because AT&T was

16   "unable to provide adequate wireless coverage" at her new home.  (*Id.* ¶ 5.)

17        Plaintiff claims that Apple and AT&T created an "association-in-fact" to jointly market

18   and sell Apple's iPhones in exchange for AT&T being the "exclusive wireless carrier" in the

19   United States for the device.  (*Id.* ¶ 34.)  Plaintiff admits, though, that the exclusivity agreement

20   between AT&T and Apple ended in January 2011—ten months *before* she purchased her iPhone

21   4.  (*Id.* ¶¶ 5, 6.)  Plaintiff alleges that, as part of this association Apple "sent, received, and

22   exchanged, through the use of interstate wires, numerous emails" and "mailed communications"

23   ─────────────────────────

24   ² Although the Court need not reach the issue in connection with this motion, Plaintiff alleges no
     facts to support her baseless assertion that the iPhone 4's power button is "substantially certain"
     to fail "within approximately 18 months."  (Compl. ¶ 15.)  As Plaintiff herself notes, Apple has

25   sold "hundreds of millions" of iPhones—that *some* of those devices may have malfunctioned, or
     that *some* owners of those devices may have discussed the issue in online forums, is hardly

26   evidence that the devices are "substantially certain" to fail.  In fact, even though the iPhone 4 has
     been on the market for more than three years, Plaintiff herself only alleges that this "defect" has

27   affected "[t]housands of consumers" (*id.* ¶ 17) out of the "hundreds of millions iPhone units"
     Apple sold.  If necessary, Apple will prove (at the appropriate time) that any suggestion that

28   iPhone 4 power buttons are "substantially certain" to fail "within 18 months" is blatantly false.

APPLE INC.'S  MOTION TO DISMISS
COMPL. & MEM. OF P. & A. IN SUPPORT
CASE NO. 3:13-CV-2167-EMC

1  with "personnel at AT&T" *without* disclosing the alleged latent defect.  (*Id.* ¶ 43.)  Plaintiff

2  claims that AT&T relied on these communications from Apple, in which (according to Plaintiff)

3  unidentified Apple personnel "touted the superior attributes of the iPhone 4, but craftily and

4  fraudulently omitted mentioning any disclosure of the material defect plaguing the phone's Power

5  Button."  (*Id.*)  Plaintiff never identifies a single one of these "numerous emails" and "mailed

6  communications" with AT&T.  She never explains what, exactly, Apple said in those

7  communications, who at AT&T received those communications, when the communications took

8  place, or what *specific* information Apple should have disclosed in these communications.

9  Instead, she simply makes the blanket assertion that that AT&T was "fraudulently deceived" by

10  these unidentified "emails and mailed correspondence" and that AT&T "would not have agreed"

11  to the "joint marketing and sale of the iPhone 4" if AT&T been made aware of "the true nature of

12  the defect plaguing the iPhone 4 … ."  (*Id.*)

13      Based on these allegations, Plaintiff seeks to certify a nationwide class of  "all consumers"

14  who purchased an iPhone 4 from either Apple or AT&T (*id.* ¶ 48), and asserts claims for (1)

15  unlawful and fraudulent business practice under California's Unfair Competition Law, Cal. Bus.

16  & Prof. Code §§ 17200, *et seq.* ("UCL") and (2) violations of the Racketeer Influenced and

17  Corrupt Organizations Act ("RICO") under 18 U.S.C. §§ 1962(b) and (c).

18  **III.   LEGAL STANDARD**

19      Motions to dismiss should be granted where, as here, Plaintiff has failed to state any valid

20  claim for relief.  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where

21  there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under

22  a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

23  A complaint should be dismissed if it does not allege *facts* sufficient to make out a claim that is

24  "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167

25  L.Ed.2d 929 (2007).  And while the Court must accept all *well-pled* facts as true, "conclusory

26  allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."

27  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Accordingly, the Court need

28  not assume the truth of legal conclusions merely because they are pled in the form of factual

APPLE INC.'S  MOTION TO DISMISS
COMPL. & MEM. OF P. & A. IN SUPPORT
CASE NO. 3:13-CV-2167-EMC

1  allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009);

2  *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Instead, "for a complaint to survive a

3  motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

4  content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S.*

5  *Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

6  Additionally, under Rule 12(f), the Court "may strike from a pleading an insufficient

7  defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

8  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must

9  arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Fantasy,*

10  *Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and first alteration

11  omitted), *rev'd on other grounds*, 510 U.S. 517 (1994).

12  ## IV.  MANUFACTURERS HAVE NO DUTY TO DISCLOSE LATENT DEFECTS.

13  Plaintiff's Complaint must be dismissed because all of her claims are premised on Apple's

14  "fail[ure] to disclose" a "latent defect"—namely, that the iPhone 4's power button can allegedly

15  break "after the 1 year warranty covering the device has expired."  (*See* Compl. ¶¶ 1, 3.)  Under

16  California law, unless the latent defect poses a safety risk (there is none alleged here) or the

17  plaintiff alleges that he or she relied on some specific affirmative misrepresentation made prior to

18  sale (Plaintiff never identifies any) there is simply no duty to disclose that a product might

19  malfunction at some point in the future.  *Vitt*, 469 F. App'x. at 608 ("*Daugherty* … hold[s] that

20  there is no duty to disclose that a product may fail beyond its warranty period absent an

21  affirmative misrepresentation or a safety risk.").  In fact, courts have consistently rejected exactly

22  the claim Plaintiff is attempting to assert here—that manufacturers should be liable under the

23  UCL or any other cause of action because of an alleged failure to disclose a latent defect.  *See*

24  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-43 (9th Cir. 2012) (manufacturers have no

25  duty to disclose alleged defects unless safety concerns are implicated); *Bardin v. DaimlerChrysler*

26  *Corp.*, 136 Cal. App. 4th 1255, 1270 (2006) (allegations that defendant concealed alleged defect

27  failed to state UCL claim as a matter of law); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d

28  964, 970 (N.D. Cal. 2008) (dismissing UCL claims based on failure to disclose alleged defects in

notebook computer "since any defects in question manifested themselves after expiration of the warranty period[.]"), *aff'd*, 322 F. App'x. 489 (9th Cir. 2009); *Hoey*, 515 F. Supp. 2d at 1105 ("[t]here is no authority that provides that the mere sale of a consumer electronics product in California can create a duty to disclose any defect that may occur during the useful life of the product."); *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) (rejecting allegation that computers were "substantially certain to fail within their five year useful lives" because "the only expectation that a purchaser could have had was that the product would function properly for the duration of the manufacturer's express warranty."); *Berenblat v. Apple Inc.*, 2009 WL 2591366, at *5 (N.D. Cal. Aug. 21, 2009) ("[t]he failure to disclose a defect that might, or might not, shorten the effective life span of [a product] that functions precisely as warranted throughout the terms of the express warranty" is not actionable); *Morgan v. Harmonix Music Systems, Inc.*, 2009 WL 2031765, at *4 (N.D. Cal. July 7, 2009) ("[a]ccording to all of the relevant case law, defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use"); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965) (a consumer can be "fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.").[3]

---

[3] This analysis does not change because Plaintiff alleges that that the purported "defect" is "substantially certain to render the phone unusable prior to the expiration of its useful life." (Compl. ¶ 42.)  *See also Hicks v. Kaufman and Broad Home Corp.*, 89 Cal. App. 4th 908 (2001). Regardless of what the purported "useful life" of the iPhone is—Plaintiff's complaint is silent on that point—courts have repeatedly rejected plaintiffs' attempts to plead around *Daugherty* in consumer product cases by alleging that the product is "substantially certain" to eventually fail. *See Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010) (the "unique" products at issue in *Hicks*—concrete foundations—had "indefinite" useful lives, in contrast to typical consumer goods, such as cars and tires, that plainly have a "limited useful life" and therefore "*Hicks* does not support Plaintiffs' argument that it should be applied to excuse the failure to seek repair of the vehicles at issue here during the warranty period."); *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1099 (S.D. Cal. 2010) ("While the *Hicks* exception may make sense for goods—such as the foundation of a home—that consumers may reasonably expect to last for decades, applying such an exception to consumer goods—such as televisions or other electronics—about which customer-expectations will be highly subjective and will vary widely 'would eliminate term limits on warranties, effectively making them perpetual or at least for the useful life of the product'"); *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 851 (N.D. Cal. 2012).

In *Daugherty v. American Honda Motor Co., Inc.*, the plaintiffs sued Honda on behalf of all purchasers of cars equipped with a certain type of engine.  *Daugherty*, 144 Cal. App. 4th at 827.  That engine allegedly had a design defect which could, over time, cause problems that might require a complete engine replacement.  *Id.*  Just as Plaintiff does here, the plaintiffs in *Daugherty* alleged that Honda knew about the defect but deliberately failed to remedy it and failed to warn the public of the risk of damage the defect posed.  *Id.*  But since the engines in the *Daugherty* plaintiffs' cars did not malfunction (if at all) until after the express warranty had expired, on demurrer the trial court dismissed the plaintiffs' entire complaint, including all claims under the UCL, with prejudice.

The Court of Appeal affirmed.  As the *Daugherty* court explained, even if the plaintiff could prove that the manufacturer knew about the defect at the time of sale, "to hold that all latent defects are covered under the written warranty, whether they become apparent to the customer before or after expiration of the written warranty, would place an undue burden on the manufacturer.  [The manufacturer] would, in effect, be obliged to insure that a vehicle it manufactures is defect-free for its entire life."  *Id*. at 831 (quoting *Walsh v. Ford Motor Co*., 588 F. Supp. 1513, 1536 (D.D.C. 1984)).

That is exactly what Plaintiff is attempting to do here—transform Apple's written warranty into a guarantee that its products will never malfunction during their useful life.  That is not the law; instead, "the purpose of a warranty is to contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer."  *Oestreicher*, 544 F. Supp. 2d at 972.  Since Apple has no duty to affirmatively warn consumers that its products might break after their warranties expire, all of Plaintiff's claims must be dismissed with prejudice.

## V.     PLAINTIFF CANNOT STATE A CLAIM UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT.

Despite the clear rule established by *Daugherty*, Plaintiff attempts to use Apple's supposed "failure to disclose" to cobble together RICO claims by alleging that Apple formed an "association-in-fact" with AT&T (which is not named as a defendant) and engaged in

1  "racketeering activity" that consisted of predicate acts of criminal mail and wire fraud.  But

2  "omissions" can only qualify as mail or wire fraud if Apple was under some affirmative legal

3  duty to disclose the omitted facts, and the only omitted "fact" Plaintiff identifies is the risk that

4  the iPhone 4 might malfunction after its warranty expires.  (Compl. ¶¶ 34, 40-45.)  Since Apple

5  has no duty to disclose that alleged "fact," Plaintiff's RICO claims must all be dismissed for

6  failure to plead any viable predicate acts.  Plaintiff's RICO claims suffer from a host of other

7  problems as well—Plaintiff has not adequately pled any *facts* (as opposed to legal conclusions) to

8  support her RICO claims, let alone with the specificity required under Rule 9(b).  Because

9  Plaintiff cannot allege facts sufficient to establish the necessary elements of either of her RICO

10  claims, they should both be dismissed with prejudice.

11       **A.**     <u>**Apple Never Engaged in Any "Predicate Acts."**</u>

12       In her Complaint, Plaintiff asserts claims under 18 U.S.C. §§ 1962(b) and (c).  18 U.S.C. §

13  1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to

14  conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of

15  racketeering activity or collection of unlawful debt."  To establish a claim under § 1962(c),

16  Plaintiff must allege that Apple engaged in (1) conduct (2) of an enterprise (3) through a pattern

17  (4) of racketeering activity (*i.e.*, a predicate act) and, additionally, must establish that (5) Apple

18  caused injury to Plaintiff's business or property.  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083,

19  1086 (9th Cir. 2002).  Similarly, 18 U.S.C. § 1962(b) makes it unlawful "to acquire or maintain…

20  any interest in or control of" an enterprise "through a pattern of racketeering activity or through

21  collection of an unlawful debt."  As with § 1962(c), to establish a violation of § 1962(b), Plaintiff

22  must show that Apple participated in an enterprise through a "pattern of racketeering activity."

23  *Sigmond v. Brown*, 645 F. Supp. 243, 245 (C.D. Cal. 1986) (citing *United States v. Brooklier*, 685

24  F.2d 1208, 1222 (9th Cir. 1982)).  In addition, § 1962(b) also requires that Plaintiff allege facts to

25  show "1) [that] the defendant's [racketeering] activity led to its control or acquisition over a

26  RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of

27  a RICO enterprise."  *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 920 (C.D. Cal. 2011).

28

1    To satisfy the "racketeering activity" element of both section 1962(b) and (c), Plaintiff

2    must demonstrate that Apple committed a series of predicate criminal acts. *See* 18 U.S.C. §

3    1961(1); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493 (1985). The predicate acts that

4    Plaintiff alleges in her complaint are limited to wire fraud and mail fraud: Plaintiff alleges that

5    Apple committed those crimes when it "craftily and fraudulently omitted mentioning any

6    disclosure of the material defect plaguing the phone's Power Button" in unidentified emails to

7    AT&T, and in (also unidentified) ads and in communications with consumers. (Compl. ¶ 43; *see*

8    *also id.* ¶ 44 ("none of these advertisements contained any disclosure by Apple that the iPhone 4

9    was plagued by a latent defect.").)

10    None of those allegations come close to establishing a viable predicate act. Wire and mail

11    fraud requires: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails

12    or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or

13    defraud. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010); 18 U.S.C. §§ 1341,

14    1343. But absent an affirmative, "independent duty" to disclose, the "failure" to disclose a fact

15    cannot support a claim of mail or wire fraud. *California Architectural Bldg. Prods., Inc. v.*

16    *Franciscan Ceramics, Inc*., 818 F.2d 1466, 1472 (9th Cir. 1987) (alleged omissions cannot serve

17    as the basis for a federal claim of mail or wire fraud "[a]bsent an independent duty, such as a

18    fiduciary duty or an explicit statutory duty"); *United States v. Dowling*, 739 F.2d 1445, 1449 (9th

19    Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985). As explained above, Apple had no

20    "independent duty" to disclose here—in fact, California courts have repeatedly rejected attempts

21    to impose even ***civil*** liability for "failing" to disclose that a product could malfunction after its

22    warranty expired. *See*, *e.g.*, *Daugherty*, 144 Cal. App. 4th at 830; *Vitt*, 469 F. App'x. at 608.

23    Because Plaintiff has not (and cannot) state a claim for wire or mail fraud, she cannot establish

24    the predicate acts ("racketeering activity") necessary to state a RICO violation—and those claims

25    must all be dismissed. *See In re All Terrain Vehicle Litig*., 771 F. Supp. 1057, 1062 (C.D. Cal.

26    1991) (dismissing RICO claim with prejudice where complaint "alleges no independent duty on

27    the part of Defendants giving rise to mail and wire fraud liability for failure to disclose"), *aff'd*

28    978 F.2d 1265 (9th Cir. 1992); *Martinelli v. Petland, Inc*., 2009 WL 2424655, at*2 (D. Ariz. Aug.

APPLE INC.'S MOTION TO DISMISS
COMPL. & MEM. OF P. & A. IN SUPPORT
CASE NO. 3:13-CV-2167-EMC

7, 2009) (dismissing RICO claims based on allegations of non-disclosure where plaintiffs do not assert an independent duty to disclose).

### B.  Plaintiff's RICO Allegations Are Content-Free, Conclusory Boilerplate.

In her Complaint, Plaintiff accuses Apple of committing a series of ***federal crimes***.  Yet the allegations that Plaintiff relies on to support those allegations are, in large part, merely generic boilerplate that is vague, conclsuory, and entirely devoid of any factual support.  As the Supreme Court has held, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'" are not entitled to a presumption of truth on a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555).  The more exacting pleading standards established by *Iqbal* and *Twombly* apply "equally, if not more so," to RICO claims, *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009), and the pleading standard is even higher here because Plaintiff's RICO claims are based on the alleged predicate acts of wire or mail fraud.  As "[t]he Ninth Circuit has repeatedly insisted," Federal Rule of Civil Procedure 9(b) must "be followed in RICO actions."  *Lancaster Comty. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405 (9th Cir. 1991); *see also O. Thronas, Inc. v. Blake*, 2010 WL 1371390, at *5 (D. Haw. Apr. 7, 2010).  Under Rule 9(b), all averments of "fraud or mistake [and] the circumstances constituting fraud or mistake" must be stated "with particularity," and the circumstances constituting alleged fraud must "'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Blake*, 2010 WL 1371390, at *5 (citation omitted).   Accordingly, Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme."  *Lancaster*, 940 F.2d at 405.  As discussed below, Plaintiff's Complaint fails to meet any of these standards.  Instead, Plaintiff attempts to plead a RICO violation precisely as the Supreme Court has cautioned plaintiffs cannot—as "an unadorned, the-defendant-unlawfully-harmed-me accusation".  *Iqbal*, 129 S. Ct. at 1949.

1.      **Plaintiff Has Not Adequately Pled that Apple Has Committed Mail and Wire Fraud.**

As discussed above, Apple's "failure" to disclose a latent product defect cannot support a claim of mail or wire fraud.  Moreover, Plaintiff's Complaint also fails because Plaintiff has not alleged any of the factual details required to adequately plead her claims.  Instead, Plaintiff simply alleges that, at some undisclosed point in time, in some unidentified "emails" and "mailed communications" to AT&T, Apple "touted the superior attributes of the iPhone 4 but craftily and fraudulently omitted mentioning any disclosure of the [defect]" and that AT&T "relied on those representations by Apple."  (Compl. ¶ 43.)  She does not identify what Apple said in those communications, who at AT&T received those communications, when the communications took place, or what ***specific*** information Apple should have disclosed in those communications.

Plaintiff's allegations about advertisements to consumers "disseminated through interstate wires" where Apple purportedly "touted the attributes of the iPhone 4" but failed to disclose a "latent defect" are similarly sparse.  (*Id.* ¶ 44.)  Plaintiff never identifies any of these advertisements in any way, let alone what specific advertisements she allegedly saw (if any), what she relied on in those advertisements, or when she purportedly saw them.  These kinds of vague and generic assertions of "mail and wire fraud" do not come close to satisfying the specific pleading requirements imposed by Rule 9(b).  *See, e.g.*, *Lancaster*, 940 F.2d at 405 (mail fraud allegations were "too generalized to satisfy the dictates of Rule 9(b)" where plaintiff failed to mention specific mailings); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (rejecting RICO claim because "[t]he allegations of predicate acts in the complaint concerning those elements of RICO [mail and wire fraud] are entirely general; no specifics of time, place, or nature of the alleged communications are pleaded"); *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (plaintiffs' "allegations describing the operative events failed to mention any use of the mails or telephones," and a single paragraph

1    alleging defendants used mail or telephone calls to execute a fraudulent scheme is not, "standing

2    alone," sufficient under Rule 9(b)).[4]

3                    **2.      Plaintiff Cannot Allege Causation for Any RICO Violation.**

4            Plaintiff has also failed to adequately allege any actual facts to support the causation

5    element of RICO.  Again, Plaintiff's allegations on this issue must be pled with particularity:

6    "Mere recitations of the causation element of the RICO claim do not provide sufficient grounds

7    for entitlement to relief."  *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051 (N.D. Cal.

8    2009) (citing *Twombly*, 550 U.S. at 555).  Conclusory allegations of causation are therefore

9    insufficient, and Plaintiff must allege facts that clearly explain his theory of causation.  *Poulos v.*

10   *Caesar's World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004) (plaintiff must "draw a causal link

11   between the alleged fraud and the alleged harm.").  Cursory allegations that a plaintiff acted "in

12   reliance" on representations, without facts to support the causal link, are "not enough" to survive

13   a motion to dismiss.  *Actimmune*, 614 F. Supp. 2d at 1051-52.

14           But here, Plaintiff does not come close to satisfying these standards.  Instead, she asserts

15   that, had AT&T been "made aware" of the latent defect with the iPhone 4, "AT&T would not

16   have agreed to enter or continue its association-in-fact with Apple."  (Compl. ¶ 43.)  But Plaintiff

17   offers *no* factual support for these legal conclusions—they are precisely the "mere recitations of

18   the causation element" of RICO that courts have rejected.  For example, it is far from obvious that

19   AT&T would have **refused** to sell the iPhone 4 if it had been "informed" that the device could

20   break after more than a year of continuous use.  Yet, Plaintiff offers not explanation—Plaintiff

21   never identifies what facts Apple should have specifically disclosed to AT&T, when those

22   _____

23   [4] Because Plaintiff has failed to adequately plead the predicate acts of mail and wire fraud, she
     has similarly failed to establish that those acts constituted a "pattern" under RICO.  Specifically,
     Plaintiff must demonstrate that the predicate acts satisfy the Supreme Court's test for "continuity"

24   and "relatedness."  *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239-40 (1989).  Thus, Plaintiff
     must plead facts demonstrating that Apple's predicate acts "amount to, or . . . otherwise constitute

25   a threat of, continuing racketeering activity."  *Id.* at 240.  "To satisfy the continuity requirement,
     Plaintiff must prove either 'a series of related predicates extending over a substantial period of

26   time [, i.e., closed-ended continuity],' or 'past conduct that by its nature projects into the future
     with a threat of repetition[, i.e., open-ended continuity].'"  *Howard v. America Online, Inc.*, 208

27   F.3d 741, 750 (9th Cir. 2000) (citations omitted).  Plaintiff's Complaint fails to plead *any* facts
     demonstrating either of these requirements—which is not surprising, given that Plaintiff has

28   refused to provide any specific facts regarding the alleged predicate acts themselves.

                                                                    APPLE INC.'S  MOTION TO DISMISS
                                                                    COMPL. & MEM. OF P. & A. IN SUPPORT
                                                                    CASE NO. 3:13-CV-2167-EMC

1   disclosures should have been made, why those specific facts would have caused AT&T to refuse

2   to sell the iPhone 4, or how AT&T's reaction (whatever it was) would have prevented the

3   Plaintiff from buying her device.  Moreover, Plaintiff was certainly not required to sign up with

4   AT&T when she purchased her phone.  As she acknowledges in her Complaint, the Apple/AT&T

5   exclusivity agreement ended in January 2011—and Plaintiff bought her device more than 10

6   months later, in October 2011.  (Compl. ¶¶ 5, 6.)

7                                              *        *        *

8            Apple was under no possible duty to disclose the "defect" Plaintiff alleges, and Plaintiff

9   has failed to allege her RICO claims with the specificity required by Rule 9(b).  Since Plaintiff

10  does not (and cannot) allege any **facts** that could support her RICO claims, they should both be

11  dismissed.

12  **VI.      PLAINTIFF HAS FAILED TO PLEAD A CLAIM UNDER THE UCL.**

13           Plaintiff's remaining cause of action—for "fraudulent" and "unlawful" conduct under the

14  UCL is similarly flawed.  As explained above, California law is clear that Apple has no duty to

15  affirmatively warn consumers that its products might break after their warranties expire, and

16  Plaintiff cannot base a "fraudulent" UCL claim on the non-disclosure of "facts" that Apple had no

17  obligation to disclose.  *Daugherty*, 144 Cal. App. 4th at 838; *Tietsworth v. Sears, Roebuck & Co.*,

18  2009 WL 3320486, at *8 (N.D. Cal. Oct. 13, 2009) (failure to disclose a latent defect does not

19  constitute a fraudulent business practice under the UCL); *Jackson v. Roe*, 273 F.3d 1192, 1203

20  (9th Cir. 2001) ("[The UCL] does not give a plaintiff license to 'plead around' the absolute bars

21  to relief contained in other possible causes of action by recasting those causes of action as ones

22  for unfair competition."); *Targan v. Nissan Motor Company Ltd.*, 2013 U.S. Dist. LEXIS 87148,

23  at *29 (N.D. Cal. June 20, 2013) ("Plaintiffs have failed to adequately allege facts establishing a

24  duty to disclose. 'Absent a duty to disclose, the failure to do so does not support a claim under the

25  fraudulent prong of the UCL.'") (citing *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th

26  1544, 1557 (2007)).

27           Nor can Plaintiff state a claim under the "unlawful" prong of the UCL.  Here, Plaintiff's

28  "unlawful" UCL claim depends entirely on her claim that Apple violated the RICO statutes.

- 14 -

APPLE INC.'S  MOTION TO DISMISS
COMPL. & MEM. OF P. & A. IN SUPPORT
CASE NO. 3:13-CV-2167-EMC

(Compl. ¶ 74.)  *See also Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) ("[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations…as unlawful practices.").  Because Plaintiff's RICO claims fail as a matter of law, her claims under the UCL's "unlawful" prong fail as well.  *Daugherty*, 144 Cal. App. 4th at 837 (because the Court rejected Daugherty's claims under the CLRA, he "cannot state a violation of the UCL under the 'unlawful' prong predicated on a violation of either statute, as there were no violations"); *Hoey*, 515 F. Supp. 2d at 1106 (UCL claims predicated on other claims that were not adequately pled must be dismissed); *see also Ingels v. Westwood One Broad. Servs., Inc*., 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law.").

## VII.   **PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.**

Finally, Plaintiff's request for injunctive relief—including her demand that this Court "enjoin[] Apple from selling its products with a defective power button"—fails because she has not alleged (and could not credibly allege) that she is personally threatened by any repetition of the injury she claims to have suffered.  To have standing to assert a prayer for injunctive relief in federal court, Plaintiff must demonstrate that she is "realistically threatened by a repetition of [the violation]."  *Gest*, 443 F.3d at 1181 (citations omitted and emphasis in original).  Where a plaintiff cannot demonstrate the threat of repetition, her prayer for injunctive relief fails.  *See, e.g.*, *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff lacked standing to sue for injunctive relief on behalf of class of employees where she was no longer an employee of the company and there was "no indication . . . that [plaintiff] has any interest in returning to work," so she "would not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work"); *Campion v. Old Republic Home Prot. Co.*, 861 F. Supp. 2d 1139, 1149 (S.D. Cal. 2012) (plaintiff who did not intend to purchase another warranty plan lacked standing because "Article III imposes a jurisdictional requirement that is more stringent than the UCL, and which, with respect to Plaintiff's claim for injunctive relief, is not satisfied."); *Stephenson v. Neutrogena Corp.*, 2012 U.S. Dist. LEXIS 105099, at *3 (N.D. Cal. July 27, 2012) (striking prayer for injunctive relief where plaintiff did

APPLE INC.'S  MOTION TO DISMISS
COMPL. & MEM. OF P. & A. IN SUPPORT
CASE NO. 3:13-CV-2167-EMC

not allege that she would purchase products in the future); *Missaghi v. Apple Inc.*, No. 13-CV-2003-GAF, Dkt. #14 (C.D. Cal. May 31, 2013) (striking claim for injunctive relief).

Here, Plaintiff is already personally aware of the alleged "defect" and she has not alleged that she intends to purchase a "defective" iPhone in the future.  Accordingly, Plaintiff could not be threatened by any possibility of future injury, and her allegations are therefore insufficient as a matter of law.[5]

**VIII.  CONCLUSION.**

As discussed above, Plaintiff's claims all fail as a matter of law.  Apple respectfully requests that the Court dismiss the Complaint with prejudice and its entirety.

Dated:  July 8, 2013

RICHARD B. GOETZ
MATTHEW D. POWERS
KELSEY M. LARSON
VICTORIA L. WEATHERFORD
O'MELVENY & MYERS LLP


By:  /s/ Matthew D. Powers
    Matthew D. Powers
Attorneys for Defendant
Apple Inc.

---

[5] Plaintiff's failure to allege facts sufficient to support her individual claim for injunctive relief likewise dooms her prayer for injunctive relief on behalf of the class. *Deitz v. Comcast Corp.*, 2006 WL 3782902, at *4 (N.D. Cal. Dec. 21, 2006) (class averments did not cure the defect in plaintiff's complaint because "[u]nless the named plaintiff is himself entitled to seek injunctive relief, he 'may not represent a class seeking that relief.'") (internal citations omitted); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 626 (N.D. Cal. 2011) ("Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury.").

APPLE INC.'S  MOTION TO DISMISS
COMPL. & MEM. OF P. & A. IN SUPPORT
CASE NO. 3:13-CV-2167-EMC